JODI LINKER
Federal Public Defender
Northern District of California
NED SMOCK
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:  (415) 436-7700
Facsimile:   (415) 436-7706
Email:        Ned_Smock@fd.org

Counsel for Defendant ZARATE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: CR 25-CR-00106 TLT |
| Plaintiff, | **DEFENDANT'S SENTENCING MEMORANDUM** |
| v. | Date:  May 2, 2025 |
| JUAN ZARATE, | Time:  10:00 a.m. |
| Defendant. | Court: Hon. Trina L. Thompson |

# INTRODUCTION

Juan Zarate is scheduled to appear before the Court on May 2, 2025, for a jointly requested combined change of plea and sentencing hearing. Mr. Zarate intends to plead guilty to an information charging one count of possession for sale of methamphetamine. He respectfully requests that the Court impose the parties' agreed-upon sentence of time served and one business day to be followed by three years of supervised release and a stay-away order from the Tenderloin. In light of the proposed disposition, he requests that the Court decline to order preparation of a Presentence Report, pursuant to Federal Rule of Criminal Procedure 32(c)(1)(A)(ii).

Mr. Zarate is a 45-year-old chef from Mexico who has been in the United States since he was a teenager. His only prior criminal adjudication involved a successful diversion term more than 20 years ago in 2004. He has worked in the kitchen at several San Francisco restaurants over the past 20 years including the Beach Chalet. Most recently, he was working at an Italian restaurant on Russian Hill called Amarena. Mr. Zarate lived in an apartment on Eddy Street in San Francisco for several years paid for with his wages earned in San Francisco restaurant kitchens. During the pandemic, the hospitality industry was hit hard, Mr. Zarate lost a restaurant job, and he started to struggle. He was quickly falling behind on child support payments, was unable to see his child, and he became more and more depressed. On February 17, 2025, Mr. Zarate was arrested after he was seen engaging in a hand-to-hand transaction with a man on O'Farrell Street. He was not a sophisticated drug dealer by any means. When officers approached and searched Mr. Zarate, he had small amounts of methamphetamine, cocaine, and crack in his pocket. He was initially charged in San Francisco Superior Court and he was out of custody during the pendency of the case. Earlier this month the state case was dropped and the case was charged here in federal court. As part of this fast track disposition, Mr. Zarate waived the right to proceed by indictment, waived the right to seek release while the case was pending, and he immediately took responsibility for his conduct by agreeing to plead guilty at the earliest possible opportunity. Mr. Zarate will face substantial immigration consequences as a result of this conviction. He will not only be subject to near-certain deportation back to Mexico, but he will be ineligible for numerous avenues of relief in immigration proceedings and will become permanently inadmissible to the United States in the future.

**DISCUSSION**

**I.   Advisory Guidelines Calculation**

Mr. Zarate agrees with the government that the adjusted offense level is 15, as set forth in the parties' plea agreement. The advisory guidelines are calculated this way:

| | | |
|---|---|---:|
| a. | Base Offense Level, U.S.S.G. §2D1.1: | 20 |
| b. | Specific offense characteristics under U.S.S.G. Ch. 2 (*e.g.*, amount of loss, use of firearm) | + 0 |
| c. | Adjustments under U.S.S.G. Ch. 3 (*e.g.*, role in the offense) | + 0 |
| d. | Zero Point Offender: | - 2 |
| e. | Acceptance of Responsibility: | - 3 |
| | **TOTAL:** | **15** |

The parties also agree that Mr. Zarate's criminal history category is I. United States Pretrial Services determined that Mr. Zarate has no countable convictions. His advisory guideline sentencing range is therefore 18-24 months.

**II.   A Sentence of Time Served Would Be Sufficient but Not Greater Than Necessary To Achieve the Sentencing Goals Of § 3553(a)**

In sentencing Mr. Zarate, this Court must consider all of the directives set forth in 18 U.S.C. § 3553(a); the Guidelines are only one factor among many to be considered by the Court. *See United States v. Booker*, 543 U.S. 220 (2005); *Kimbrough v. United States*, 128 S. Ct. 558, 570 (2007). "The overarching statutory charge for a district court is to impose a sentence sufficient, but not greater than necessary" to achieve the goals of § 3553(a). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (internal quotations omitted). Those goals include the need to: (1) reflect the seriousness of the offense; (2) promote respect for the law; (3) provide just punishment for the offense; (4) afford adequate deterrence to criminal conduct; (5) protect the public from further crimes of the defendant; and (6) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2). Section 3553(a) also directs the Court to consider a number of additional factors, including: the nature and circumstances of the offense, § 3553(a)(1); the history and characteristics of the defendant, § 3553(a)(1); the kinds

1  of sentences available, § 3553(a)(3); the sentencing guideline range, § 3553(a)(4); pertinent
2  Sentencing Commission policy statements, § 3553(a)(5); the need to avoid unwarranted sentencing
3  disparities, § 3553(a)(6); and the need to provide restitution to any victims of the offense, §
4  3553(a)(7).

Under *Booker*, the sentencing court must impose the lowest reasonable sentence that fulfills the goals of Congress, unencumbered by offense levels, criminal history, or the availability of authorized downward departures. While the Court may apply a presumption of reasonableness to sentences within the applicable Guidelines range, the district court "does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Rita v. United States*, 551 U.S. 338, 351 (2007). Nor is it required to use a formulaic approach yielding a mathematical justification of non-Guidelines sentences. *See Gall v. United States*, 558 U.S. 38, 49 (2007). Rather, it must exercise "reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors." *Rita*, 551 U.S. at 358.

### A.   The nature and circumstances of the offense

Mr. Zarate's conduct in the instant matter was possession of just over four grams of methamphetamine (including the weight of packaging) with intent to sell it. He had small amounts of crack and powder cocaine with him at the time of his arrest as well. Mr. Zarate did not have a weapon nor did he engage in violence. When he was approached by police officers, Mr. Zarate was entirely respectful and he took no steps to avoid arrest. He told the officers that he understood they were doing their job. He did not possess a scale or a larger stash of drugs that might have suggested he was involved in larger-scale trafficking.

Mr. Zarate was arrested as part of the government's initiative targeting cases arising in the Tenderloin for federal prosecutions. He has no convictions on his record. After his arrest, Mr. Zarate was initially charged in San Francisco County and he was out of custody appearing for court voluntarily for approximately two months. As part of this disposition he will stand convicted of a felony offense. Had the case continued in state court, it is likely that he would have been considered for diversion or, at a minimum, a misdemeanor offer. The parties' proposed felony disposition more than adequately addresses the nature and circumstances of the offense.

### B. Mr. Zarate's history and characteristics

Juan Zarate was born in the state of Oaxaca in Mexico. His parents were married, but his father died of a stroke when Mr. Zarate was only four years old. He chose to come to the United States at the age of 17. He lived in Monterey for two years and did construction and maintenance work, but he has spent the rest of his life in San Francisco. For nearly twenty years Mr. Zarate supported himself by working in San Francisco restaurant kitchens, sometimes in two jobs at a time. Among others, he has worked at the Beach Chalet, Chiaroscuro near the Transamerica Pyramid, a bar-restaurant called Coin-Op which closed during the pandemic, and Darn Good Food, a financial district establishment that also closed during the pandemic.

Mr. Zarate has a son who is now 18 years old. He was an active father even after he and his son's mother separated. They shared custody and Mr. Zarate had his son as many as 5-6 days per week. However, when restaurant work slowed down during the pandemic, Mr. Zarate started to struggle financially, he fell behind on child support payments, and his relationship with his son's mother deteriorated to a point that she no longer let him see his son. Losing his son was devastating to Mr. Zarate, who told the undersigned that his son was his inspiration in life. Mr. Zarate became deeply depressed and he started to spend more time in the streets.

Mr. Zarate has been in jail since he was arrested by federal agents who picked him up when he voluntarily appeared for court in San Francisco County on the state charges stemming from the same conduct charged here. He has never served a jail sentence, so the time he has been in custody already has been very difficult for him. Mr. Zarate's mother is still in Oaxaca and she is getting older. Mr. Zarate has promised her that he will come to help to care for her.

### C. A sentence of time served provides specific deterrence and protects the public from future crimes

The negotiated disposition in this case is by no means lenient. Mr. Zarate has no convictions and he has never before been sentenced to jail. He has already spent more time in custody than individuals with his background who are charged with the same offense in state court. Again, had this case proceeded in state court it is highly unlikely that he would have faced a felony conviction. Further, as part of this plea Mr. Zarate is agreeing to be deported following service of his sentence. Almost every avenue for relief that Mr. Zarate otherwise would be able to pursue as a potential

defense in immigration proceedings will no longer be available to him. Most severely, he will be rendered permanently inadmissible to the U.S., meaning that he will be barred from re-entry for the rest of his life. Finally, before deportation, he will spend an uncertain period of time in immigration detention which would serve as an additional custodial consequence and deterrence. The recommended disposition of this matter both protects the community from crime and provides specific and general deterrence.

## CONCLUSION

For the aforementioned reasons, Mr. Zarate respectfully requests the Court sentence him to the parties' joint recommendation of time served and one business day and three years of supervised release with the proposed special conditions.

Dated:   April 24, 2025                              Respectfully submitted,

                                                     JODI LINKER
                                                     Federal Public Defender
                                                     Northern District of California

                                                            /S
                                                     NED SMOCK
                                                     Assistant Federal Public Defender

DEFENDANT'S SENTENCING MEMORANDUM

6